The next case is Vinson v. Koch Foods of Alabama. Mr. Guerrero is here for the appellate. Ms. Barlotta and Mr. Walker are here for the appellees. Mr. Guerrero, you may begin when you're ready. May it please the court, my name is Charles Guerrero and I'm here for appellant Maria Vinson. As you sure know, this case involves a number of issues and unless the court has some particular questions you want to focus on, I would like to discuss the broad issue that I believe affects all of this case and that is how the Civil Rights Act of 1991 has affected both pleadings and summary judgment standards. Before you do that, Mr. Guerrero, I understand the argument, but we have a case that really puts you in a bind in terms of splitting out where McDonnell Douglas applies and where McDonnell Douglas doesn't apply and what do you do with that case? With the claim? Yes. One, I certainly will not purport to tell Judge Wilson what Quigg said. Very well written opinion. And I think what we have in Quigg is a recognition that the 1991 amendments did rot some change to Title VII and the courts of appeals have struggled with what that change is. Looking first as to does it only apply in direct evidence cases and the Supreme Court made that clear in Desert Palace v. Costa. No, that's not right. It applies where there's mixed motives in any case, circumstantial evidence or otherwise. So then the courts of appeals and district courts have had to struggle with that. Most recently, however, in Nassar, the Supreme Court in discussing whether or not mixed motive jury instruction is appropriate in a retaliation case said, no, it's not. 2000 E-2M changed Title VII for only status-based discrimination. There's no discussion in Nassar that in cases where there's mixed motive. And, of course, mixed motive is never used in the statute. Those words do not appear in the statute at all. And then you have EESC v. Amber Crombie and Fitch from the Supreme Court, which was, I think, two terms ago. Again, a status-based discrimination case involving religious discrimination, a woman who shows up for a job wearing a headscarf and she's not hired. One motive, I'm not hiring her because she's got a headscarf. And in that opinion, a unanimous court with Justice Alito concurring especially, but a unanimous court, Justice Scalia writes that this is no longer a but-for statute. This is a motivating factor statute for all status-based discrimination claims. That statement is fairly clear that the amendments applies to all cases, not just mixed motive cases. Now, we can look at what that even means to talk about a single motive or a mixed motive case. And there's been a great deal of discussion on this issue in law reviews. But that almost every Title VII case, and I've been doing this for 45 years, this is the rare case where there's a single motive that, yes, I fired you because of your race. There's going to be some evidence that there was some unlawful motive and some articulated reason. The only single motive cases out there are the ones where the employer does not step forward and articulate a legitimate reason. That being the case, the evidence is there's only one motive. But as soon as there's sufficient evidence to articulate a legitimate reason, you're faced with two motives. And in many ways, it's the standard that this court is probably familiar with from the NLRB, which is the right line of cases dealing with labor relations and violations of the NLRA, where they actually talk about dual motives. And in that context, it's, well, this person engaged in union activity, and then they were fired allegedly because they were disruptive. Those are dual motive cases, and they use the exact same burden-shifting standard that the 1991 Civil Rights Act has applied. But again, I just want to bring you back. You're expanding on the argument you've made in your brief as to why you think your formulation of the current Title VII standard is correct. My question to you is a little bit more practical. You've got Quigg standing there, and the district court tried to apply it. And so if you're going to show error, you need to show how the district court misapplied our precedent, because a lot of the Supreme Court cases you've just talked about were decided before Quigg. Right. So you can't ask this panel to just reject Quigg. Well, I'm not asking the panel to reject Quigg. Then what did the district court do wrong then in splitting the things up? What you can look at is, particularly with regard to the termination discussion, which was under a mixed motive discussion, clearly there's a prima facie case. District court finds there's a prima facie case. Looks at the explanations, and Mr. Birchfield gave four or five different explanations. One, Mr. Gill complained about her. Mr. Gill says, I never complained about her. He says, we had money problems. Testimony is there was no money problems. So there's question about whether his statement's false or not. One, he gave multiple reasons, two reasons. That meant the burden of proof should have been shifted to the employer to prove that's why they terminated her. And even if they prove that, the plaintiff should win. How do you get past on the termination, how do you get past a prima facie case if she was replaced by another Hispanic? I don't think that precludes her from demonstrating that her national origin was a motivating factor. That's an inference that can be drawn, but it's an inference in favor of the defendant, the movement, which the court should not have drawn at summary judgment. They can certainly argue that to the jury, but they cannot rely upon inferences in their favor at summary judgment. Did you argue with regard to the termination claim, did you argue it under McDonnell-Douglas or under a mosaic theory or under something else? We argued it under both theories. We argued that we can demonstrate managing the evidence, and again, McDonnell-Douglas is a way of discussing evidence. So we demonstrated how you could prove discrimination under McDonnell-Douglas because even under the motivating factor test, you still have to prove that your national origin, your race was a factor. And so McDonnell-Douglas can be useful for that. So we did that, which is why the court got to pretext. You're just saying that the court got pretext wrong. Well, they got pretext wrong, and also what they did from Quigg, and I believe this is a misreading of Quigg. In Quigg, you had both a Title VII and a 1983 claims. And the motivating factor, the mixed motive discussion under Title VII is one thing, but then there's a question as to whether the individual board members should be held liable under 1983. And there, there was testimony as to some board members that indicated they wanted a man in the job or they prefer a man that indicated gender bias and sex discrimination. And so that in Quigg, I think the dismissal of some of those individuals was affirmed, but reversed as to others because there was some indication they had an improper motive. That's under 1983. The district court in this case, after pretext discussing how, why there is evidence of inconsistencies, all the things that would have to prove to show pretext, court goes on to say, but there's no evidence of anyone discussing her race or her national origin. Quigg, and it cites to the page under 1983 about intentional comments. One, that's a misapplication of Quigg. I don't think that, and if it is proper, it's inconsistent with Reeves from the Supreme Court because that's basically showing pretext. It's not enough to show pretext. You must show pretext plus direct evidence that my race was in the mix. So it would be contrary to Quigg and contrary to Reeves and contrary to Costa because it would require direct evidence. That once the court found a prima facie case, the question is, even at that point, the burden of proof should have shifted to the employer. And under the summary judgment standard, then they have the burden of proving there are no material facts in dispute, not merely claiming the plaintiff can't demonstrate there are material facts in dispute. What evidence was there of – I'm sorry? What evidence was there that race or national origin had anything to do with it? It was just – Other than the fact that she was Hispanic. Yeah, and the circumstantial evidence around her termination, the way she had been treated in terms of the discipline, being disciplined unequally, the changing of her job, that no one had ever been in that job. I think it was all relatively circumstantial. That would suggest that she's being treated differently because of her race. There were some affidavits or declarations from other employees who recognized that Mr. Birchfield seemed to treat the Hispanic employees differently than the white employees. So, talking about a mosaic, it's – I don't like using that term, but he was all circumstantial. Mr. Birchfield hired her. Mr. Birchfield did hire her. And then after she was terminated, he hired a Hispanic to replace her. Mm-hmm. Okay. Well, let me ask you about the failure to promote. In order to establish – get a prima facie case on the failure to promote, one of the elements is that she has to be qualified for the job. Is the record clear that she didn't have a bachelor's degree and that was a qualification for the job that Mr. Melton did? Well, Mr. Melton did not. He did not have a bachelor's degree. He did not have a bachelor's degree. There are two promotions that occurred for that professional development trainer position. And so the first position when Ms. Johnson filled it, she was just finishing up her – well, working on her master's. She did not have it. But she had a master's degree. She had – well, no, she had a bachelor's. She was working on her master's. As of the time this was done, she had never even completed her work on her master's. But in that – I see my time is up. In that case, there were published qualifications. She didn't have all of the qualifications. And, in fact, Mr. Birchfield testified there were five or four reasons why he picked her. It was her enthusiasm, her professionalism, all fairly general reasons. When you get to Mr. Melton, he then has completely different qualifications. But, again, they don't meet the published qualifications. So it's a question as to whether they even applied. Thank you. All right. Thank you. All right. Mr. Gurrier, we'll hear from Ms. Barlotta. May it please the Court. Opposing counsel. The district court is due to be affirmed because there's no evidence of discriminatory intent in this case. And whether the Court views Ms. Vinson's claims through a mixed motive or single motive prism, the overarching question here is, did Ms. Vinson come forward with substantial evidence to defeat defendants' motion for summary judgment? And the answer to that question is no. And as we heard just from opposing counsel, there was a lot of discussion about standards. There was not a lot of discussion about what specific facts in the record, the record evidence showed that Ms. Vinson's race or national origin was the factor or any factor in any challenged employment decision. And that's because that evidence is not in the record. So what we're left with is Ms. Vinson's subjective perceptions about the decision maker, Mr. Birchfield, that he didn't like her, that he didn't greet her as warmly when she came into the room. That is not substantial evidence sufficient to defeat a motion for summary judgment. And that is why the District Court is due to be affirmed as for the promotion claims, as for the termination claims, and as for the disciplinary action claims. And I will address each of those in turn. But can you talk a little bit about the District Court's conclusion that she had not shown adverse action with the switch of her position? At some point during your discussion? Correct. So the District Court had two findings. Well, made two findings there. First of all, that she had not pled that as a separate claim, the change in duties. But secondly, even if she had. But that's not a separate claim. That's a subset of your claim. You have to show adverse effect. But that's not the claim in and of itself. The claim is the switch from one position to the other. And adverse effect is a part of that claim, is it not? I don't speak. I understand your Honor's question. But the way the claim was pled was that that was a disciplinary action claim, that she was treated less favorably because she had a change in duties. Right. Some of the other employees following a suspension. Right. When they came back, when all three of those ladies came back. Correct. Right. And what the Court held was that a change in duties is not an adverse action, which is consistent with this Court's precedent. As this 11th Circuit has been very resistant to finding that a change in duties is a material adverse action because it said that it really strikes at the heart. And this was in Shannon v. Bell South and Kidd v. Mondo and Davis Town Lake as well. That that work assignment strike at the heart of an employer's business judgment expertise. So unless you have a change in duties that comes with something such as a decrease in pay, a different schedule, you don't have an adverse action. At all? Unless you have that, you don't have an adverse action? Correct. So if you have someone who is working in an office, in a so-called white collar job, and you tell that person you are now going to go work in 100 degree temperature outside in the field for 8 to 10 hours a day, that's not a factor that courts consider in figuring out whether the switch was adverse or not? All that matters is whether or not you are getting paid the same thing? Well, if you are in a white collar job and you are suddenly doing an entirely different job, that would be a demotion. No, no, no. It's not a demotion. You are getting paid the same thing. It's like you are still the CFO. You are still getting paid $100,000. But from now on, you are going to be doing the fields. Well, it wouldn't be if in this case, as it was undisputed, that that person didn't have a problem with it and voluntarily and actively sought. That's a different issue. I'm interested in your position that if you keep the same title and you keep the same salary, a switch of positions can never be adverse. And I thought that's what the district court was saying, and I'm not quite sure that that's right. Well, I think the district court was saying that there may be circumstances where that could happen, but this circuit has been very suspicious of it. And under the facts of this case, that's not what we had. Well, where did she go? She went from working in the HR office to being on the kill floor. Correct. You don't think that's a change? A change that came with a pay increase. Afterwards, not immediately. After she learned the job, and that was her discussion with the hiring manager. When she asked him for a raise, he said, if you will do this job, and she said she took it as being a new supervisory role, that she would go out, she would train on these jobs, and then she could train the other employees on those jobs, and that she was willing to do it and she was happy to do it because it came with a pay increase. So on the facts of this case, this would not be an adverse action. But with respect to the – Why couldn't the jury, though, reach a contrary conclusion, though? Why couldn't the jury say, well, I think that's an adverse action, if she goes from an HR position inside in an air conditioned office to killing and deboning chickens on the outside? Because the undisputed evidence – Even with a raise, why wouldn't the jury be – why isn't that a matter within the prerogative of the jury, though? Because her testimony in this case was she did not perceive that as being adverse. She said that she didn't have a problem with it and she was happy to do it. Her only complaint was that she wasn't given a computer, which she said that she had been promised. Plus, you have the additional problem of – So you would cross-examine her at the trial about that and then leave it up to the jury? Well, we'd leave it up to the jury, but where's the evidence that that was discriminatory? And that gets back to the initial question in this case. Where is the evidence that the change in duties had anything to do with Ms. Vinson being Hispanic or of Puerto Rican ancestry? Because what we don't have in this case is we don't have discriminatory comments, we don't have statistical evidence, and we don't have a complete prima facie case coupled with pretext on any of the claims. And I would like to address that with respect to the – Let's talk about pretext. There is abundant evidence. There's abundant evidence that the reason that Koch gave for her termination is disputed, right? No. No? That is not right. Okay. What reason did Koch give when they sent the EEO response? What explanation did the Koch official provide? That her job had been eliminated because she was not doing what she had been asked to do. And that who complained about her? In that specific EEO response, it wasn't that somebody had complained about her, I don't believe. It was that the human resources manager had had a conversation with the plant manager about supervisors coming to him and saying that she had disappeared for periods of time on the floor and that they, between the two of them, decided that the position was not needed. And one of those people later testified through discovery that that conversation never took place the way it was characterized. Actually, he did testify that the conversation took place. He testified that they had a conversation – The way it was characterized. It didn't take place. No, he said he did not dispute that. He just said he didn't remember the entire conversation. And that is what the district – He never testified that he didn't say that he wanted her gone? He said he didn't recall saying that. And then he said that he did not remember the entire conversation. But if you say you don't recall making a statement, isn't that evidence that you didn't make the statement? Not when you have testimony coupled with that, that the person says that they don't recall the entire conversation and that he did not dispute that he didn't make that statement, which is what his complete deposition testimony was. He said, I don't dispute making that statement. I just don't remember the entire conversation. And that would not be sufficient to create an issue of fact on that. But, again, that gets into pretext. How about the money aspect of it? There wasn't evidence that there wasn't really a monetary issue involved? There wasn't contrary evidence that the reason for letting her go was because they were losing money? That gets back to the same discussion. He said that they may have discussed – the HR manager in that conversation. That was his testimony. But this gets to – and with respect to opposing counsel, the district court did not find that Ms. Vinson had established a prima facie case on the termination. She did not even assert in her briefs in the district court that she had established a prima facie case. She went straight to pretext. And the district court dropped a pretty substantial footnote in her opinion saying, Ms. Vinson asked this court to apply motivating factor but then doesn't apply it herself. Instead, she goes straight for McDonnell Douglas and argues only pretext as getting her to the jury. And this court nor any other court has ever held that you get to a jury just by pretext, evidence alone, without first establishing a prima facie case or some other evidence that would give us a convincing mosaic that race was taken into account. And that was not done here. Now, on the promotion claims, I do want to be clear that those were only pled under Section 1981. So to the extent that there could be a motivating factor issue in the case, that would not apply to the 1981 claims under MABRA where this court has said that mixed motive does not apply to 1981 claims. One of her arguments putting aside the summary judgment issues is that you do not need to plead a McDonnell Douglas prima facie case at the 12B6 stage. What do you say about that? We'd agree with that. We think that's the correct characterization of this court's precedent. But you don't think that was part of the district court's decision for knocking out some of the claims on a motion to dismiss? No. What the court said was he applied, Judge Fuller at that time applied to Twombly and Iqbal and said that there wasn't sufficient factual content or factual allegations on the unspecified promotion actions and on the retaliation claim to move her case from possible over into the realm of plausible. So he referenced or set out the prima facie elements because he was just noting that this is what the claim is and this is how it's proven, but the holding in the case was she just hadn't pled sufficient factual content. Even under Cerkowicz? Right, even under Cerkowicz. Cerkowicz is conclusory pleading. But I think... It's a Supreme Court case that hasn't been overruled and I know that's a problem because you've got Twombly and Iqbal which follow, but you've got a case directly on point which says that you don't need to plead a prima facie case or anything close to it. All you've got to do is say I was discriminated against and you get past the 12B6 motion under the old Connolly versus Gibson standard. Well, I would know that this court has called Cerkowicz into question because it predated Twombly and Iqbal. But it's not for us to overrule a Supreme Court case. It's directly on all fours. Well, but... Especially when McDonnell Douglas is an evidentiary standard not a pleading standard. But let me say this about... Let's just say, okay, all you have to say in your complaint is I was discriminated against. That doesn't give us sufficient factual matter to know what the claims are or that they could actually be plausible. And with respect to the retaliation claim, for example, what she said in the complaint was after I endured adverse action, I complained, and that was it. And the district court gave her a chance to go back and replete it. And so she came back with an amended complaint and it said the same thing. Now, that's not surprising because when she was deposed in the case, she admitted she'd never complained to anyone about discriminatory conduct. She was asked that question directly. Did you ever complain to anyone? She said, well, I tried, but the person I called never called me back. So we didn't have enough on the front end pleading stage, but now we know for sure that there wasn't enough after discovery in the case. It was the same thing with the promotion claims. She just said that there were people outside of her protected class who filled jobs, but there wasn't any information in the complaint about what the jobs were, who made the decision, whether she applied. It was just these unspecified jobs. That's a due process issue for a defendant. How can we even defend a case if we don't know what the claims are? And that was the substance of the district court's holding. You're asking almost for the sort of pleading that goes with fraud claims, that's heightened pleading under Rule 9, the who, what, when, where, why, how. You don't necessarily get that even under Iqbal and Tuomly for run-of-the-mill civil claims. Well, but has this court ever said that you can have a promotion claim by just saying, I'm in a protected class, and there was a job, other people filled jobs, without saying that you applied for them? No, I don't think... Because then you haven't even pled that you sustained an adverse action. And I don't think the court's ever said that. Were those jobs advertised? Which jobs? The jobs that she says she didn't get based on discrimination. Were they posted and advertised? Just because I want to be clear, are you talking about the promotion claims that went to summary judgment? Yes, Your Honor, there was two promotion claims. So the 2011, to the same position, but the position came open in 2011. It was posted. She applied. As Your Honor noted, she did not meet the criteria for having a bachelor's degree. And the second time, there was not evidence in the record as to whether or not the position was posted. It was not clear that it was not posted. But the key takeaway there was that Ms. Vinson knew it was open. She testified that she knew the position was coming open, but that she did not recall applying for it. And my time has expired. All right. Thank you, Ms. Barlotta. We'll hear from Ms. Walker. If it please the Court, on behalf of David Birchfield, we are asking the Court to correct the record where both Judge Fuller and Judge Rothstein announced without any allegation in the complaint that Mr. Birchfield was sued in his individual capacity under Section 1981. As a matter of fact and record, he was allegedly described in the amended complaint as an agent and his complex HR manager. There is no specific allegation that he was acting in his individual capacity to deny any rights of Ms. Vinson. So the announcement by Judge Fuller in Document 25 on page 14 to the effect that he was sued in his individual capacity actually was brand new to the case. And the defendant never specifically responded to an individual capacity claim because none was made. What's the difference from your client's perspective between an official capacity and an individual capacity claim under 1981? His personal funds. If he's sued in an official capacity, who is being sued? The company. Without being named? Well, if he's an agent, his actions as an agent. He can only act as an agent in an employment context. Yes. But he can be sued individually, right, depending on what the allegations are. He certainly can, and that's why we would expect if he's being sued individually that the plaintiff says so, so that we know. For instance, he was not personally served. That is indication they did not intend to sue him individually. And had he been personally served, we would know. Did you move to dismiss for lack of service? We did not. It's a weird procedural scenario, right? It really is. But it's because it's really alleging an accidental waiver because if we're not on notice that he's individually sued, then we certainly are not going to contest service. So in the end, we get this announcement by Judge Fuller that he's being sued individually, and Judge Rothstein in Document 95, Footnote 2, picks it up and also says he's being sued individually, and we haven't had a chance to defend that. I haven't had a chance to look at the record in this case. Did you move after Judge Fuller's initial order to correct that and tell him, listen, you've gotten this thing wrong, he was never sued in an individual capacity, and let's get rid of that mistake? We did not. Okay. We still believe and contend that doesn't change the subject matter jurisdiction has not been invoked in his individual capacity. Thank you. Thank you, Ms. Walker. Mr. Gurria. Thank you, Your Honor. With regard to whether or not moving Ms. Vinson to the new job was an adverse action, I think the district court simply got it wrong. That she moved from being in a position where she's assisting new employees to learn their jobs, translating, doing HR work, spending time in an HR office, and she's moved to go down and begin gutting chickens, taking parts of chickens out of conveyor belts. That's a significant change in her duties. The district court ignored Ms. Vinson's affidavit where she states that employees were coming up to her and saying, are you being punished? Why are you down here? Now, the court also said she got a raise. Well, she got a raise after she did the job three months, so she's doing the job at the same rate of pay, not getting paid what the people who are doing that job are getting paid. Did she like it? I don't think she had much choice but to like it. And whether or not she likes the change is not necessarily controlling as to whether the change is adverse. There's a lot of things that could happen that could be an adverse action where an individual says, but I may like it, I'll do it, it's work I never thought of wanting to do, but I like it. It doesn't mean it's not adverse. Also, she did not request that job. Mr. Birchfield put her in that job. This is after she came back, was terminated along with the white employees. They get called back immediately. She doesn't get called back immediately. But she gets paid for the extra day. That can't be adverse, right? Well, it's very, very close, I think. Maybe you wouldn't say very, very close, but close, because during the period of time she shows up at work thinking she's been terminated. The only reason she even finds out she's still working there is that she shows up to gather her stuff. The other two women are back working. And Mr. Birchfield gets a call that she's there, and he says, oh, good, I won't have to fire her. Well, it's clear he was intending to fire her. She's subject to some other different conditions because they have to check with Mr. Elrod in another state as to whether to bring her back. Didn't do that as to white women. She comes back. Okay, she gets paid for that one day, but it certainly put a great deal of stress on her. And then right after that, she gets a new job. She does that job. I think a jury could conclude when looking at the entire spectrum, he put her in that job figuring she would hate it and wouldn't do it, and she quit. She didn't quit, so they ended up terminating her. So you have to look at all of those circumstances. On Mr. Birchfield's issue, and I see my time is up, but defendants did not, Mr. Birchfield did not file a 12B4 motion, a 12B5 motion. The first time this issue was ever raised, I think, was in their reply brief, document 178, 179, where I think there's an allusion to it. But new issues raised in the reply brief are waived. And then with regard to the promotion, there is the district court concluded that one of her promotions, she didn't state she didn't properly plead the case because she hadn't applied. And that's where she had asked about it and been told, oh, that's going to pay less than you're getting paid. And indeed, it turned out it paid more, and a white person is hired for that job. That's clearly enough under Cerkiewicz to state a claim, and the court was wrong in dismissing that. So Ms. Vinson asks that this court reverse the district court's determinations on both motions to dismiss in summary judgment and remand this case. Thank you, counsel.